UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Theodore E. Kent et al,

   Plaintiffs,

v.

Bank of America, N.A. et al,

   Defendants,

---

Civ. No. 11-2315 (JRT/LIB)

**REPORT AND RECOMMENDATION**

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A), upon Defendants'[1] motion for attorney fees. For the reasons outlined below, the Court recommends that Defendants' motion be granted in part and denied in part.

The background of this case was fully explained in the undersigned's prior Report and Recommendation (Docket No. 58), and the Court incorporates those facts here by reference. In his Memorandum Opinion and Order (Docket No. 69), the Honorable John R. Tunheim adopted the Report and Recommendation, granted Defendants' motion to dismiss all claims against all Defendants, denied Plaintiffs' motion to remand the matter to state court, and granted Defendants' motion for Rule 41(d) attorneys' fees, subject to a hearing to determine the amount of fees to be awarded under Rule 41(d). A hearing on the motion was held on October 18, 2012

---

[1] The only Defendants who have brought the present motion, and who thus are entitled to any attorneys' fees, are Bank of America, N.A., BAC Home Loans Servicing, LP, Mortgage Electronic Registration Systems, Inc., MERSCORP, Inc., U.S. Bank, N.A., Wells Fargo, N.A., and The Bank of New York Mellon. Defendant Peterson, Fram & Bergman, P.A. has not sought any fees pursuant to Rule 41(d) and the Court does not recommend that any fees be awarded to it.

1

for the limited purpose of determining the amount of fees that Defendants may recover pursuant to their Rule 41(d) motion.

## I. STANDARD OF REVIEW

Because the Court has already found that an award of attorneys' fees pursuant to Rule 41(d) is appropriate and recoverable in this case, the Court's discussion below of authority regarding Rule 41(d) is merely in regard to the **scope** of attorneys' fees recoverable in this case.

Federal Rule of Civil Procedure 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Under the rule, "the moving party need only establish that: (1) a plaintiff's previous action was dismissed; (2) a second action was commenced that is based upon or includes the same claim against the same defendant; and (3) there are costs and attorneys' fees incurred by the defendant in the prior action that will not be useful in the newly-filed litigation." Siepel v. Bank of America, N.A., 239 F.R.D. 558, 563 (E.D. Mo. 2006) (the Honorable Paul A. Magnuson sitting by assignment). At issue before the Court now is only the third element of Defendants' burden: whether there were attorneys' fees incurred in the prior Emmick[2] action that are not useful in the present Kent[3] matter. As previously explained in the Court's prior Report and Recommendation, it is Defendants' burden to establish the specific costs that they incurred in the Emmick action that are not useful in the present case.

---

[2] In referring to Emmick, the Court refers to Emmick et al v. Bank of America, N.A. et al, No. 11-1307 (DSD/SER) (D. Minn. July 28, 2011).
[3] In referring to Kent, the Court refers to the present case now before the Court.

## II.     DISCUSSION

Defendants' counsels Thomas M. Hefferon and Mark Schroeder have each submitted to the Court an affidavit in support of Defendants' motion for fees pursuant to Rule 41(d) providing the specific attorneys who have worked on the Emmick and Kent matters, the time they spent on each matter along with a description of their activity, the title of each attorney, and the hourly billing rate for each attorney for the two cases. (See Docket Nos. 72 and 73). At the request of the Court, Defendants submitted a supplemental submission simply reorganizing the tabled entries to specifically fall within the categories outlined by the Court at the hearing. (See Docket No. 77). The supplemental submission includes no new entries whatsoever and was merely a simpler way for the Court to address the numerous time entries requested by Defendants.

Before addressing the amount of time spent in the Emmick matter that is not useful in the present Kent matter, the Court first addresses the question of whether the billing rates for each of the attorneys that performed work in both cases is reasonable. See Briggs v. Wal-Mart Stores East, LP, 2008 WL 3890549, at *2 (E.D. Mo. Aug. 18, 2008) ("Rule 41(d) authorizes a court to order a plaintiff to pay the defendant's cost and **reasonable** attorney's fees from a previously dismissed action that is re-filed." (emphasis added)). "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001); City of Shorewood v. Johnson, No. 11-374 (JRT/JSM), 2012 WL 695982, at *10 (D. Minn. Jan. 12, 2012). The hourly billing rates should be "in keeping with the prevailing market rate in the relevant legal community for similar services provided by lawyers of comparable skill, experience, and reputation." Windsor Craft Sales, LLC v. VICEM Yat Sanayi ve Ticaret AS, No. 10-297 (ADM/JJG), 2012 WL 3776462, at *10 (D. Minn. Aug. 30, 2012).

Defendants provide the following hourly billing rates for each of the attorneys that worked on each case:

| Attorney | Title/Experience | Hourly Billing Rate |
|---|---|---|
| Thomas M. Hefferon, Esq. | Senior Partner | $325.00 |
| Maria Green. Esq. | Senior Associate | $275.00 |
| W. Kyle Tayman, Esq. | Mid-Level Associate | $250.00 |
| Jared Kaprove, Esq. | Junior Associate | $195.00 |
| Timothy DeBeer, Esq. | Junior Associate | $195.00 |
| Mark G. Schroeder, Esq. | Shareholder/Partner | $325.00 |
| Benjamin E. Gurstelle, Esq. | Associate | $195.00 |

Plaintiffs made no objection or argument at all regarding the hourly billing rates provided by Defendants. This Court has recently found the above billing rates reasonable in similar cases involving similar claims, and some of the same attorneys. See Blaylock v. Wells Fargo Bank, N.A., No. 12-693 (ADM/LIB), 2012 WL 3611918, at *2-3 (D. Minn. Aug. 21, 2012); Murphy v. Aurora Loan Servs., LLC, 859 F. Supp.2d 1016, 1024-26 (D. Minn. May 4, 2012). The Court here likewise finds that the rates noted above for all of the attorneys are commensurate with the ordinary rates for similar work in the community performed by lawyers of comparable skill and experience.

As to the amount of time spent on the various activities for which fees are requested, Defendants attorneys' fee requests fall within five distinct categories: 1) fees incurred in analyzing the Emmick complaint; 2) fees incurred in removing the Emmick matter to federal court; 3) fees incurred in filing and briefing the motion to dismiss in Emmick; 4) miscellaneous

fees; and 5) fees incurred in bringing the Rule 41(d) motion in the present case.[4]  The Court addresses each category individually below.

### 1. Fees incurred in analyzing the Emmick complaint

For time spent analyzing the Emmick complaint, Defendants request the following fees:

| Billing Entry | Billing Individual | Time | Amount | Billing Description |
|---|---|---|---|---|
| 1 | Thomas Hefferon | 0.20 | $65.00 | E-mails regarding new matter. |
| 2 | Maria Green | 0.30 | $82.50 | Analyze records concerning ownership of plaintiffs' loans |
| **Total** | | **0.50** | **$147.50** | |

| Billing Entry | Billing Individual | Time | Amount | Billing Description |
|---|---|---|---|---|
| 3 | Schroeder, Mark G. | 0.50 | $162.50 | Review summons and complaint, and discovery requests from plaintiff. |
| **Total** | | **0.50** | **$162.50** | |

Defendants assert that time spent on these activities was not useful in the present case because "[a]lthough the Emmick and Kent complaints are similar, [they] were still required to read, analyze the factual and legal allegations, and strategize about a response for both complaints."  (Decl. of Thomas M. Hefferon [Docket No. 72] at 4).

In their written submission to the Court, Plaintiffs provided no specific objection to an award for these billing entries.  (Mem. in Opp'n to Mot. to Recover Fees [Docket No. 75] at 2-3).  At the hearing, Plaintiffs argued that the only way Defendants can recover any fees for analyzing the Emmick complaint is if they did not analyze the complaint in Kent.[5]

---

[4] The Court notes that in referring to bringing the motion itself, Defendants' request pertains only to the motion heard by the Court on April 12, 2012, addressing whether Defendants may recover any attorneys' fees in this case under Rule 41(d); Defendants do not request any fees incurred in addressing the present motion before the Court regarding the amount of fees that should be awarded.
[5] The Court is displeased with the shifting sands strategy employed by Plaintiffs' counsel throughout the course of this litigation that has made nearly every issue in this case unnecessarily convoluted and complicated and has expended the Court's limited resources needlessly.  Plaintiffs' written submission to the Court as to which fees they disputed, and the basis for any such dispute, was much more limited in scope than that argued at the hearing before the Court.  Indeed, in the written submission, it appeared that Plaintiffs only challenged an award of fees as to time

Although the complaints in the Emmick and Kent matters were indeed very similar, as previously explained in the Court's prior Report and Recommendation, some of the time spent reviewing the initial Emmick matter is simply not useful to Defendants in the Kent matter. Even if the complaints had been identical, there would have been some time spent reviewing the filings in Emmick that would have inevitably also been done again in Kent. In other words, the initial review of the Emmick materials in no way alleviated Defendants of the burden or responsibility, (nor did it help them in any material way) to read the filings in the Kent matter and determine whether most of the claims asserted in Kent were similar to those asserted in Emmick. Having spent time to also review and compare the lengthy Emmick and Kent complaints, the Court appreciates that the review itself takes time. While the analysis of the Emmick complaint might have been somewhat helpful toward understanding the Kent complaint and improving the efficiency in analyzing it, the time spent in analyzing the Emmick complaint was nonetheless not entirely useful. The very limited minimal amount of time requested for the initial review of the Emmick matter, amounting to a total of one hour, is not an effort that would

---

spent on the Rule 41(d) motion filed in the present case and asked for a general reduction in the amount requested for time spent on issues related to the removal of the Emmick matter. (See Mem. in Opp'n to Mot. to Recover Fees at 2-3). Generally, any issues not raised in the written submissions to the Court are considered waived. See e.g., United States v. Peacock, 256 Fed. Appx. 9 (8th Cir. 2007) ("an argument not raised in an opening brief is considered waived."); United States v. Darden, 70 F.3d 1507, 1549 n. 18 (8th Cir. 1995) (explaining that parties "generally must raise and brief all issues in their opening brief."). Not only did Plaintiffs fail to delineate item by item which time entries they believed were not useful, which had been provided in table format by Defendants allocating which fees were incurred in the Emmick matter and which were incurred in the Kent matter, they failed to even provide an argument for what categories of the fees should be excluded, aside from the two categories noted above. While it was also unclear to the Court exactly which time entries fell within each category requested by Defendants, and the Court ordered a supplemental filing to be made, the categories of fees that Defendants sought were specifically stated in Defendants' initial submission such that Plaintiffs would have been capable of making an argument on whether Defendants were entitled to that specific category of fees.

Although the Court might read pro se filings more liberally, there is no such general outlook on parties represented by legal counsel. Therefore, the Court could have very well found that Plaintiffs had waived any opportunity to challenge the fees that they did not dispute in their written submission. If the Court had struck the hearing on the motion and taken the matter under advisement on the parties' written submissions, as would have been well within its discretion, it would have afforded no opportunity for Plaintiffs to make any additional objections to fees other than those listed in the written submission. Nevertheless, the Court will not simply rubber stamp the fees requested by Defendants and fully considers whether Defendants are entitled to the amounts of fees requested for all categories.

have been useful for the Defendants in the Kent matter, and the Court believes that Defendants are entitled to the full amount of $310.00 requested for this category of fees.

### 2. Fees incurred in removing Emmick to this Court

For time spent relevant to the removal of the Emmick matter to this Court, Defendants request the following fees:

| Billing Entry | Billing Individual | Time | Amount | Billing Description |
|---|---|---|---|---|
| 1 | W. Kyle Tayman | 0.30 | $75.00 | Telephone calls with Ms. Green regarding removal of state case. |
| 2 | Maria Green | 0.40 | $110.00 | Discuss substance of removal petition and background facts with Mr. Tayman and Mr. Schroeder. |
| 3 | Maria Green | 0.60 | $165.00 | Correspondence with Mr. Tayman and Mr. Schroeder concerning allegations in the complaint and draft removal papers. |
| 4 | W. Kyle Tayman | 2.00 | $500.00 | Review removal in related Tully cases regarding consent from other defendants (0.3); telephone call with Ms. Green regarding representation of other defendants in the action (0.2); analyze mortgage loan files received from client for factual support for removal of action (1.5). |
| 5 | W. Kyle Tayman | 4.80 | $1,200.00 | Draft notice of removal, notice of notice of removal, consent for removal, declaration in support of removal, and civil cover form, in preparation for removal (4.1); analyze mortgage loan files received from client for factual support for removal of action (0.7). |
| 6 | Maria Green | 0.40 | $110.00 | Revise petitions for removal. |
| 7 | Maria Green | 0.40 | $110.00 | Discuss substance of removal petition and supporting papers with Mr. Tayman. |
| 8 | W. Kyle Tayman | 0.20 | $50.00 | Telephone call with Ms. Green regarding notice of removal and consent for removal from MERS. |
| 9 | Maria Green | 0.30 | $82.50 | Correspondence with Mr. Hefferon concerning removal of state court action. |
| 10 | Thomas Hefferon | 0.40 | $130.00 | Review removal papers. |
| 11 | Maria Green | 0.60 | $165.00 | Revise removal petition and related papers. |
| 12 | W. Kyle Tayman | 3.70 | $925.00 | Emails and telephone call with Ms. Green regarding notice of removal (0.3); revise notice of removal and declaration in support with comments from Mr. Hefferon and additional case law (3.6). |
| 13 | Maria Green | 0.80 | $220.00 | Revise removal petition and supporting papers. |
| 14 | W. Kyle Tayman | 1.10 | $275.00 | Emails and telephone call with Ms. Garcia regarding declaration in support of removal (0.2); revise notice of removal and declaration in support (0.9). |
| 15 | Maria Green | 0.50 | $137.50 | Finalize removal petition and supporting papers. |
| 16 | Maria Green | 0.30 | $82.50 | Finalize removal petition and related papers. |
| 17 | W. Kyle Tayman | 1.00 | $250.00 | Emails with Ms. Green and Messrs. Hefferon and Schroeder regarding finalizing and filing of notice of removal and |

| | | | | supporting papers (0.4); email client regarding notice of removal (0.1); revise for filing the notice of removal, notice of notice of removal, declaration in support of removal, civil cover form, and consent to removal forms (0.5). |
|---|---|---|---|---|
| 18 | Thomas Hefferon | 0.30 | $97.50 | Comment on removal notice. |
| **Total** | | **18.10** | **$4,685.00** | |

| **Billing Entry** | **Billing Individual** | **Time** | **Amount** | **Billing Description** |
|---|---|---|---|---|
| 19 | Schroeder, Mark G. | 1.00 | $325.00 | Review/revise notice of removal. |
| 20 | Schroeder, Mark G. | 2.00 | $650.00 | Revise, serve, and file removal papers, and e-mails with Goodwin Procter regarding revisions thereto. |
| 21 | | | $672.00 | Court filing fees for removal. |
| **Total** | | **3.00** | **$1,647.00** | |

Defendants argue that none of the time spent on the activities listed above was useful in the case now before the Court because although some of the legal research done in Emmick was useful in Kent, they were still required, in Kent, to draft new documents and research and investigate the factual circumstances supporting removal—specifically, the amount of unpaid balances on the mortgages at issue and the diversity of each of the parties—that would be relevant to federal diversity jurisdiction. (Decl. of Thomas M. Hefferon at 4). They provide that the fees they are requesting are not all of the time they actually spent on the removal, that they seek only time spent on "fact-based research," and that they have omitted any entries for time spent on legal research used in both Emmick and Kent, which they appear to concede was useful in the Kent matter. However, they provide that some of the legal research in Emmick was not "entirely useful in removing Kent because the Kent Complaint added a new cause of action against the non-diverse party, law firm Peterson, Fram, & Bergman." (Id.)

In their written submission to the Court, Plaintiffs made no specific objection to any of the time entries requested for the removal of the Emmick matter. (Mem. in Opp'n to Mot. to

Recover Fees at 2). The entirety of Plaintiffs' submission as to this category of fees provided that:

> While Plaintiffs agree that the addition of two new Plaintiffs in this matter would have required some factual research, and that Defendants likely had to re-confirm that the amount in controversy requirement was met, clearly, Defendants did not have to "re-invent the wheel." It is likely that the bulk of the work done in the Emmick matter was in fact useful in this matter and Plaintiffs object to an award of $3,592.5.

(Mem. in Opp'n to Mot. to Recover Fees at 2).

As is clear from Plaintiffs' written submission, they acknowledge that some fees are appropriate. What is unclear, however, is the fees they believe should not be awarded and any reasoning or argument for why they should not be awarded, other than a general statement that "likely the bulk of the work" was not useful.

The Court agrees with Defendants that the time spent on communications relevant to removal of the Emmick matter, drafting documents relevant to the removal, and filing such documents were not completely useful in the Kent matter. As explained above with regard to the analysis of the complaint, Defendants would have been required to perform some of these activities regardless of the similarity in the complaints and removal submissions. Nevertheless, the Court believes that the amount of time spent on drafting and revising the initial removal papers in Emmick would have served as a useful model for the removal in Kent and, based on the similarity between the removal notices, had some beneficial impact in the removal of the Kent matter. As such, the Court will reduce the fees requested in entries 1-20, which primarily relate to time spent drafting and revising the removal documents, by fifty percent to account for

the fact that some of the drafting and revisions in Emmick would have been beneficial in drafting the Kent removal submissions.[6]

As to the time spent on legal research in the Emmick matter, the Court agrees with Defendants that such time entries were properly omitted, as surely, they would have been helpful in the removal of the Kent matter. With regard to the time entries spent on "fact-based research" the Court is unpersuaded that all such factual research in Emmick was not useful in Kent. With the exception of two plaintiffs, all other plaintiffs remained the same. And while both parties appropriately agree that there would have been some work required to reconfirm the amounts owed on the mortgages and the diversity of the parties, having done all of that work once would have been beneficial for merely "updating" it the next time in the removal of Kent. Because the time spent on such "fact-based research" was entered jointly in the time entries numbered 1-20, which the Court has already reduced by fifty percent, the Court believes that the same reduction is appropriate for the factual work done to prepare the submissions and will not reduce the fees requested any further.

In summary, with respect to fees requested for time entries related to the removal of the Emmick matter, the Court finds that Defendants are entitled to the full amount of fees requested in entry 21 ($672.00) and to fifty percent of the amount requested in entries 1-20 ($5,660.00). The adjusted amount for this category of fees then totals $3,502.00.

### 3. Fees incurred in filing and briefing the motion to dismiss in Emmick

For time spent relevant to the motion to dismiss filed and briefed in the Emmick matter, Defendants request the following fees:

---

[6] Defendants' argument that they were required to address a new count in the Kent complaint is unavailing for awarding Rule 41(d) costs. Time spent on analyzing the new count in the Kent complaint is time that was spent in the Kent matter, not the Emmick matter, and as more fully discussed below, the Court's inquiry is limited to efforts spent in the prior action that are not useful in the following suit.

| Billing Entry | Billing Individual | Time | Amount | Billing Description |
|---|---|---|---|---|
| 1 | Thomas Hefferon | 0.30 | $9.29 | Emails regarding motion to dismiss. |
| 2 | W. Kyle Tayman | 1.10 | $26.19 | Emails with Ms. Green and Messrs. Hefferon and Schroeder regarding motion to dismiss and amended complaint (0.3); telephone call with Ms. Green regarding amended complaint (0.3); revise motion to dismiss regarding amended complaint (0.5). |
| 3 | Maria Green | 0.20 | $5.24 | Correspondence with internal case team concerning motion to dismiss. |
| 4 | W. Kyle Tayman | 0.40 | $9.52 | Emails with Ms. Green and Messrs. Hefferon and Schroeder regarding motion to dismiss filing. |
| 5 | W. Kyle Tayman | 0.10 | $2.38 | Revise motion to dismiss and corporate disclosure in preparation for filing. |
| 6 | W. Kyle Tayman | 0.50 | $11.90 | Confer with Ms. Green and Mr. Kaprove regarding motion to dismiss briefing. |
| 7 | Maria Green | 1.20 | $31.43 | Confer with internal case team concerning motion to dismiss (0.5); draft motion to dismiss (0.7). |
| 8 | W. Kyle Tayman | 0.80 | $19.05 | Confer with Mr. Kaprove regarding motion to dismiss briefing and collection of foreclosure files. |
| 9 | Jared Kaprove | 0.80 | $14.86 | Conference with Mr. Tayman regarding strategy. |
| 10 | W. Kyle Tayman | 0.40 | $9.52 | Confer with Mr. Hefferon regarding motion to dismiss arguments and review of foreclosure files. |
| 11 | W. Kyle Tayman | 5.30 | $126.19 | Draft motion to dismiss the amended complaint. |
| 12 | W. Kyle Tayman | 2.50 | $59.52 | Research case law for support for motion to dismiss. |
| 13 | Jared Kaprove | 1.30 | $24.14 | Analyze loan documents in connection with motion to dismiss. |
| 14 | Thomas Hefferon | 0.20 | $65.00 | Conferences regarding coordinating briefing with Mr. Pratte. |
| 15 | W. Kyle Tayman | 3.20 | $76.19 | Draft motion to dismiss. |
| 16 | W. Kyle Tayman | 1.50 | $35.71 | Research case law for support for motion to dismiss. |
| 17 | W. Kyle Tayman | 2.40 | $57.14 | Draft motion to dismiss. |
| 18 | Jared Kaprove | 0.60 | $11.14 | Legal research for motion to dismiss. |
| 19 | Jared Kaprove | 0.60 | $11.14 | Draft motion to dismiss. |
| 20 | W. Kyle Tayman | 2.40 | $57.14 | Draft motion to dismiss. |
| 21 | Maria Green | 4.40 | $115.24 | Revise draft motion to dismiss |
| 22 | W. Kyle Tayman | 2.60 | $61.90 | Draft motion to dismiss (2.2); telephone call with Ms. Green regarding same (0.4). |
| 23 | W. Kyle Tayman | 1.40 | $33.33 | Research case law for support for motion to dismiss. |
| 24 | Maria Green | 1.80 | $47.14 | Further revise draft motion to dismiss. |
| 25 | W. Kyle Tayman | 2.90 | $69.05 | Analyze loan foreclosure files for additional support for motion to dismiss and availability of collateral estoppel arguments. |
| 26 | Jared Kaprove | 1.70 | $31.57 | Analyze foreclosure files (0.8); communication with Ms. Garcia regarding additional foreclosure files (0.9). |
| 27 | Thomas Hefferon | 1.00 | $30.95 | Revisions to motion to dismiss. |

| 28 | Maria Green | 3.00 | $78.57 | Further revise draft motion to dismiss. |
|---|---|---|---|---|
| 29 | W. Kyle Tayman | 3.70 | $88.10 | Review memorandum of law in support of motion to dismiss (1.2); revise motion to dismiss memorandum with edits and comments from Mr. Hefferon (2.5). |
| 30 | Jared Kaprove | 0.80 | $14.86 | Analyze additional foreclosure files for motion to dismiss. |
| 31 | Thomas Hefferon | 1.20 | $37.14 | Revise motion to dismiss brief. |
| 32 | Maria Green | 1.60 | $41.90 | Finalize motion to dismiss. |
| 33 | W. Kyle Tayman | 2.50 | $59.52 | Revise motion to dismiss memorandum with edits and comments from Mr. Hefferon (2.2); telephone call with Ms. Green regarding filing of motion to dismiss (0.3). |
| 34 | Thomas Hefferon | 0.50 | $15.48 | Revise motion to dismiss brief. |
| **Total** | | **54.90** | **$1,387.44** | |

| **Billing Entry** | **Billing Individual** | **Time** | **Amount** | **Billing Description** |
|---|---|---|---|---|
| 35 | Schroeder, Mark G. | 0.30 | $97.50 | Draft notice of motion and motion to dismiss. |
| 36 | Schroeder, Mark G. | 0.20 | $65.00 | Draft letter and e-mail to Butler confirming extension of time to answer or respond to complaint. |
| 37 | Schroeder, Mark G. | 1.00 | $31.00 | Review/revise draft of brief supporting motion to dismiss. |
| 38 | Schroeder, Mark G. | 6.60 | $204.00 | Review/revise/comment upon/file brief supporting motion to dismiss and proposed order, and e-mails and telephone call with Goodwin Procter regarding same. |
| **Total** | | **8.10** | **$397.50** | |

Defendants argue that the time spent on the activities listed above was not useful in the case now before the Court because although the two complaints were similar, they were not identical, and specifically, two of the counts present in the Emmick complaint were dropped from the Kent complaint. (Decl. of Thomas M. Hefferon at 4-5). Based on this representation, Defendants have already reduced the amounts requested for all of the time entries related to the motion to dismiss to only 2/21 of the initial billing entries. (See Supplemental Submission in Supp. of Defs.' Mot. [Docket No. 77] at 4).

Plaintiffs again offered no objection to any specific fees requested related to time spent on the motion to dismiss in Emmick. (Mem. in Opp'n to Mot. to Recover Fees at 2-3).

Because Defendants seek only the same percentage of fees as the percentage of counts that were dropped from the Kent complaint, the Court finds that such an award is appropriate. The time they spent related to the two claims that were dropped in Kent was not useful to Defendants in filing the motion to dismiss in Kent. While Plaintiffs counsel's comments at the hearing that much of this lawsuit involved interrelated claims are correct, and while apportioning the amount of fees based on the percentage of claims that remained in Kent may not be a perfect correlation of time spent on each claim, the Court finds that Defendants request for only 2/21 of the time spent on the motion to dismiss in Emmick is reasonable. Undoubtedly, some of the time spent in preparing the motion to dismiss in Emmick would have been useful to Defendants in preparing the motion to dismiss in Kent because many of the same issues remained; however, some of the time spent would also not have been useful because, as already explained, regardless of how similar the claims were, Defendants would have been required to expend efforts to redraft the submissions in Kent. Furthermore, as to entries 35 and 36, which have not been reduced and which pertain to drafting the notice of motion and a letter for an extension of time respectively, the Court finds that such work performed in the Emmick matter was not useful at all in the Kent matter. As such, the Court finds that Defendants are entitled to the full amount of $1,784.94 that they have requested for this category of fees.

4. **Miscellaneous Fees incurred in Emmick**

For time spent in the Emmick matter on matters other than the three categories listed above, Defendants request the following fees:

| Billing Entry | Billing Individual | Time | Amount | Billing Description |
|---|---|---|---|---|
| 1 | Maria Green | 0.10 | $27.50 | Correspondence with local counsel concerning extension of time to respond. |
| **Total** | | **0.10** | **$27.50** | |

13

| Billing Entry | Billing Individual | Time | Amount | Billing Description |
|---|---|---|---|---|
| 2 | Schroeder, Mark G. | 0.50 | $162.50 | Telephone calls and e-mails with Butler concerning extension of time to answer or respond to complaint. |
| 3 | Schroeder, Mark G. | 0.20 | $65.00 | Review notice of initial pretrial conference, and e-mail to Goodwin Procter regarding same. |
| **Total** | | **0.70** | **$227.50** | |

As noted already above, the time spent on correspondence with regard to the <u>Emmick</u> matter is time that would necessarily have been spent in each case regardless of the similarity of issues. As such, the Court finds that the three entries requested above that did not specifically fall within the three categories discussed above were spent on activities that were not useful in the <u>Kent</u> matter. As such, Defendants are entitled to the full amount of $255.00 that they have requested for this category of fees.

**5. Fees incurred in bringing the Rule 41(d) motion in the present case**

In addition to the fees for time entries made in the <u>Emmick</u> matter, they request fees related to bringing the Rule 41(d) motion in the present case. They request a total of $12,192.25 for such time entries, which they acknowledge were made in the <u>Kent</u> matter. (<u>See</u> Dec. of Thomas M. Hefferon at 10) (titling the entries as "Entries from <u>Kent</u> invoices"). Nevertheless, they argue that they are entitled to such fees because "absent the Plaintiffs' dismissal and re-filing none of this work would have been performed." (<u>Id.</u> at 9).

Plaintiffs oppose any such award because, they argue, "Rule 41(d) is specifically limited to costs of the 'previous action.'" (Mem. in Opp'n to Mot. to Recover Fees at 2-3). They assert that while absent the dismissal of the <u>Emmick</u> matter the work on the Rule 41(d) motion would not have been necessary, this would be true in the context of every Rule 41(d) motion. (<u>Id.</u> at 3). As such, they object to any award for time spent related to the Rule 41(d) motion filed in the present case. (<u>Id.</u>)

14

The Court agrees with Plaintiffs. Despite the numerous court opinions awarding Rule 41(d) fees, Defendants have failed to present (nor has the Court found) a single opinion specifically awarding fees incurred in bringing a Federal Rule of Civil Procedure 41(d) motion. To the contrary, the opinions in this Circuit (as well as others) that have awarded such fees strongly suggest that no such fees may be awarded. See Siepel v. Bank of America, N.A., 239 F.R.D. 558, 563 (E.D. Mo. 2006) (the Honorable Paul A. Magnuson sitting by assignment) (explaining that one of the elements a party seeking Rule 41(d) fees must show is that "there are costs and attorneys' fees incurred by the defendant **in the prior action** that will not be useful in the newly-filed litigation" (emphasis added)); Copeland v. Hussmann Corp., 462 F. Supp.2d 1012, 1024 (E.D. Mo. 2006) ("costs should only be awarded for the work done by Defendants **in the previous case** that is now useless in this case" (emphasis added)). The rule is not broad enough to encompass all fees that never would have been incurred absent the voluntary dismissal. See Graves v. Sullivan, 2007 WL 1340806, at *1 (E.D. Ark. May 7, 2007) ("[C]osts awarded under the rule are properly limited to those that will be **duplicated** as a result of a repeated defense."); Copeland, 462 F. Supp.2d at 1024 ("**Rule 41(d) is not aimed at making the Plaintiff pay for the Defendants' defense**; rather it is aimed at repaying frivolous work done by the Defendants. If the Defendants can reuse it, it is obviously not useless." (emphasis added)). This reading is entirely consistent with the plain reading of the rule itself. See Fed. R. Civ. P. 41(d) ("[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: . . . may order the plaintiff to pay **all or part of the costs of that previous action**."). The fees incurred in preparing for and bringing the Rule 41(d) motion are those necessarily incurred in the present case, not those incurred in the prior action. Therefore, even though such fees may not have been incurred absent

the voluntary dismissal of the Emmick complaint, the Court finds that Defendants are not entitled to any of the requested fees for time spent on activities related to the Rule 41(d) motion filed in the present case.[7]

### III. CONCLUSION

For the foregoing reasons, the Court finds that pursuant to Rule 41(d) and this Court's August 17, 2012 Order, Defendants are entitled to an attorneys' fee award of $5,851.94.

With the exception of Plaintiffs Theodore E. Kent and LeMay F. Kent, who were not parties to the Emmick matter, Plaintiffs are equally responsible for the amount. Thus, each Plaintiff[8] is responsible for $487.66.[9] However, because Defendants have only submitted the time entries each attorney spent within each law firm, and the Court has no information as to which time was billed to which Defendant, the Court cannot determine how much of the fees awarded should be awarded to each Defendant. Given the number of Plaintiffs that will be required to make a payment, the Court recommends a method by which each Plaintiff could simply pay their share into one collective location. As such, the Court recommends that within

---

[7] At the hearing, Defendants argued that without awarding the fees incurred in bringing the Rule 41(d) motion, which may outweigh the fees recovered by bringing the Rule 41(d) motion, a party may not be inclined to pursue such a motion. Such balancing, however, is for each party to determine and weigh in each individual case. In the absence of any authority permitting such an award, and in what would appear to be contrary to the plain reading of the rule, the Court finds Defendants' argument unpersuasive.

The Court similarly finds that Defendants reliance on Kirk Capital Corp. v. Bailey, 16 F.3d 1485 (8th Cir. 1994) is misplaced. Kirk dealt with an award of Rule 11 sanctions, which as the court explained are meant "to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending." 16 F.3d at 1490. As already explained by the Court in its prior Report and Recommendation, Rule 11 fees and Rule 41(d) have entirely different purposes, and the Court does not believe that Kirk suggests that Rule 41(d) permits an award of attorneys' fees in bringing the Rule 41(d) motion itself.

[8] The Court considers each husband and wife as one plaintiff for purposes of this award. As such, the Plaintiffs subject to the award are: 1) Dustin L. Emmick; 2) Scott A. Roberts and Lisa J. Roberts; 3) Huong Kim Nguyen; 4) Lawrence Johnson and Melodi Johnson; 5) Chad M. Hanson and Rebecca Hanson; 6) Ryan Hanson; 7) Logan W. Rice; 8) Nancy B. Court and Brian E. Court; 9) Chip A. Rice and Linda S. Rice; 10) William A. Bigelow; 11) Rebecca Yarnes and Gerald Yarnes; and 12) Marjorie E. Visker.

[9] The Court notes that an exact division of the amount of fees to be awarded results in an unmanageable fraction of a penny to be paid by each plaintiff. The amount to be paid by the twelve plaintiffs ($487.66) thus results in an additional reduction of $.02 against Defendants. Taking into account all of the considerations noted above within each specific category of fees, the Court believes that such a reduction is reasonable.

10 days after the objections period to this Report and Recommendation if there are no objections, or within 10 days after a ruling has been made on any objections should they be made, Defendants be required to submit to the Court a proposed instruction as to which Defendant or Defendant's counsel the funds should be paid, who will then be responsible for making the appropriate distribution.

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) Defendants' Motion to Establish Attorneys' Fees [Docket No. 70] be **GRANTED** in part and **DENIED** in part as more fully explained above.

Dated: January 4, 2013
s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 18, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.